LAMB *v.* McKinney Lumber Company.

4-9540                                                   242 S. W. 2d 121

Opinion delivered June 25, 1951.

Rehearing denied October 8, 1951.

*P. L. Smith,* for appellant.

*Tompkins, McKenzie & McRae,* for appellee.

Paul Ward, J.   Everett Lamb was an employee of McKinney Lumber Company during the year 1948 through Saturday noon of the 28th day of August, at which time he left his job as lumber trimmer and went home.   His activities for the afternoon are disputed as will appear later, but he went to bed and was found early the next morning paralyzed and unconscious.   On August 8, 1949, he filed, through his attorney, a claim before the Arkansas Workmen's Compensation Commission, and hearings were held before a special referee on September 21, and November 28, 1949.   The Commission held adversely to claimant and so did the circuit court to which an appeal was taken.   From the judgment of the circuit court appellant prosecutes this appeal.

According to the testimony of appellant he became overheated while working as a lumber trimmer some time before noon, and had cramps and went home and went to bed. Later that afternoon he went to town, which was only a short distance away, and then he returned home and again went to bed. The next morning about four o'clock his mother, with whom he lived, found him in his bedroom unconscious. He has not yet recovered and is now paralyzed in his right arm and partially paralyzed in his right leg and his speech is greatly affected. He contends his condition is the result of becoming overheated. Appellant is around fifty years old and weighs about two hundred thirty pounds and has a florid complexion. Dr. Burleson, his family physician, lived only a short distance away and treated appellant soon after he was stricken. Appellant admits he had syphilis for some time and that he has been a heavy drinker all of his life. The mother of appellant says that he came in at noon on Saturday, August 28, 1948, and said that he had gotten too hot at work; that he was sick and did not want any dinner; that he lay down and did not get up until six or seven o'clock; that he ate supper and went to bed around seven o'clock and nothing more happened during the night until she found him early the next morning in his bedroom in a paralyzed and unconscious condition. She says appellant stayed at home and slept all afternoon. At the second hearing, however, she says appellant did get up later in the afternoon and go to town.

There was testimony that appellant was sitting on the porch of Clyde Wingfield's store between 12:00 and 1:00 o'clock on the same date, that he was dressed in clean clothes, and that he appeared to be all right. Those who had been with appellant frequently stated they never heard him say anything about getting too hot until his claim for compensation was filed. Dr. Hesterly who treated him a little less than a month after he was stricken and also treated him several times later, testified that he had never heard anyone say anything about appellant getting too hot on said Saturday afternoon until he was so informed almost a year later.

It is not clear from the wording of the Commission's finding against claimant whether it found as a matter of fact that appellant did not become overheated on this occasion, or whether it merely found that claimant's stroke and present condition were not the result of becoming overheated. Since there is some doubt as to the specific holding on this point, we will resolve that doubt in favor of appellant and proceed to consider whether there is substantial evidence to support a finding that appellant's paralytic condition did not result from being overheated. This calls for a consideration of the medical testimony.

It is appellee's contention that the stroke suffered by appellant was not the result of becoming overheated, but was the result of his physical condition and particularly the result of his having syphilis and being a heavy drinker. It is not denied that appellant has syphilis and has had for some time or that he has been a heavy drinker most of his life.

There is a signed statement in the transcript by Dr. Joe W. Reid on his office stationery, dated May 5, 1950, but there is nothing in the record to show why or how it was included. However, we will assume it was properly included and quote it as follows:

"I have examined Mr. Everett Lamb this date. He gives a history of working in August, 1948, and thought he became too hot. At this time he developed a paralysis of right arm and right leg. He in my opinion is Totally Disabled, and in my opinion it is a permanent disability. His right arm is totally paralyzed, his right leg 75% paralyzed. His speech is markedly affected. His blood pressure is 122-82. Many factors can bring about this condition. I obtained history suspicious of Syphilis. I have sent blood to the laboratory but have not yet received result of this test. A heat stroke could easily be the whole cause of this condition or at least a contributing factor."

Two letters were introduced as exhibits. One dated August 10, 1949, is from appellant's attorney to Dr. J. B. Hesterly. The writer states he had talked with the doctor

about appellant's claim and enclosed a statement for the doctor to sign stating that it would be all right for the doctor to change it any way he pleased. The other letter is from the doctor to the said attorney, dated August 12, 1949, and is as follows:

"I have your inquiry with reference to Everett Lamb, whom I have been treating for a stroke since ............ August, 1948.

"At the time I was called to see Mr. Lamb, he was helpless, and could not talk at all, and I was not given any history of him getting too hot; but later, I received information that on the 28th of August he got too hot while working for the McKinney Lumber Company and began cramping and aching all over. He immediately went to bed and sometime during the night he had the stroke. From this history of the case, it is very probable that getting too hot was the cause of the stroke, and assuming that the history given to me is true, it is my opinion that getting overheated was the cause of the stroke. The case was different to any case I have ever handled, and I cannot think of any other reason that would have caused it."

The deposition of Dr. Hesterly was taken on October 21, 1949, in which he states he treated appellant a little less than a month after he had the stroke and also treated him after that on several occasions, and that on these occasions appellant had not told him about becoming overheated or about having cramps; that at the time he wrote the letter set out above he did not know appellant was a heavy drinker or that he had syphilis; that appellant had a florid complexion which indicated a susceptibility to high blood pressure or a paralytic stroke especially when taken in consideration of his over weight; that continued drinking would have a tendency to harden the arteries and cause a stroke; that ordinarily the symptoms of becoming overheated manifest themselves pretty promptly and not after twelve or fourteen hours and generally continue without interruption until the patient recovers or dies. In the doctor's opinion syphilis affects

the lining of the blood vessels and tends to increase the blood pressure.

Dr. William A. Snodgrass, a physician and surgeon for eighteen years, examined appellant and stated that his appearance indicated that he would be susceptible to a paralytic stroke because he was a heavy set man with a florid complexion; that ordinarily a paralytic stroke is caused by a cerebral hemorrhage, and that syphilis and the excessive use of alcohol are, among other things, contributing causes to a paralytic stroke; that reasonable manual labor in the summertime is not a contributing cause ordinarily; that the effect of becoming overheated would be manifest sooner than twelve or fourteen hours and in all of his practice he had never had a patient to have a stroke from being overheated twelve or fourteen hours previously, and he had never heard of such a case; and that usually a patient suffering from overheat will recover or die in from twenty-four to thirty-six hours.

Dr. A. S. Buchanan, who has been practicing over forty years examined appellant at the same time Dr. Snodgrass did and his testimony was substantially the same as that of Dr. Snodgrass.

Dr. A. J. Burleson, who lives close to appellant, and saw him soon after he was found in a paralyzed condition, was questioned by the special referee without the presence of the attorneys for either side, and the doctor declined to make any statement for or against appellant's claim.

From all of the above we are forced to the conclusion that there is substantial evidence that appellant's paralytic condition was not caused by becoming overheated on August 28, 1948, while in the employment of the McKinney Lumber Company. The well established rule as announced many times by this court is that the findings of the Commission, in controversies of fact, shall be given the same weight on appeal as is given to the verdict of the jury. *Price Construction Co.* v. *Southern*, 216 Ark. 113, 224 S. W. 2d 358.

In the circuit court, appellant filed motion to strike certain evidence from the record. The appellant did not

206

raise any such issue before the Commission, so the motion in the circuit court came too late.

The findings of the Commission and the judgment of the lower court are affirmed.